United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed October 9, 1998

 No. 97-1360

 Air Transport Association of Canada,
 Petitioner

 v.

 Federal Aviation Administration,
 Respondent

 Consolidated with
 Nos. 97-1356, 97-1357, 97-1358, 97-1359,
 97-1362, 97-1363, 97-1364

 ---------

 On Petitioner's Motion for Attorneys' Fees

 ---------

 Before: Wald, Sentelle, and Henderson, Circuit Judges.

 O R D E R

 This matter coming to be heard and being heard before the 
court upon the application of the Air Transport Association of 

Canada for reimbursement of attorneys' fees pursuant to the 
Equal Access to Justice Act, 28 U.S.C. s 2412(d), and it 
appearing to the court for the reasons set forth more fully in 
the opinion filed contemporaneously herewith that the motion 
is well taken, it is hereby

 ORDERED, ADJUDGED, and DECREED that the Unit-
ed States reimburse the Air Transport Association of Canada 
for attorneys' fees and expenses incurred during its prepara-
tion for Asiana Airlines v. Federal Aviation Administration, 
134 F.3d 393 (D.C. Cir. 1998), in the amount of $99,246.33 this 
9th day of October, 1998.

 Per curiam

 For the Court:

Mark J. Langer, Clerk

 United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed October 9, 1998

 No. 97-1360

 Air Transport Association of Canada,
 Petitioner

 v.

 Federal Aviation Administration,
 Respondent

 Consolidated with
 Nos. 97-1356, 97-1357, 97-1358, 97-1359,
 97-1362, 97-1363, 97-1364

 On Petitioner's Motion for Attorneys' Fees
 ---------

 Before: Wald, Sentelle and Henderson, Circuit Judges.

 Opinion for the court filed by Circuit Judge Sentelle.

 Sentelle, Circuit Judge: On January 30, 1998, we issued 
an opinion allowing multiple consolidated petitions to vacate a 
fee schedule imposed by the Federal Aviation Administration 
("FAA" or "the Administration") against foreign air carriers 
for services provided to airline overflights. The matter now 
returns to us on the application of Air Transport Association 
of Canada ("ATAC"), one of the original petitioners, for 
attorneys' fees. The FAA offers various objections both as to 
ATAC's entitlement and the amount of the fees sought. 

Finding the application to be meritorious, and the objections 
to be without merit, for the reasons more fully set out below, 
we allow the application.

 Background

 In our original opinion in this matter, Asiana Airlines v. 
Federal Aviation Administration, 134 F.3d 393 (D.C. Cir. 
1998), we reviewed an FAA fee schedule established pursuant 
to 49 U.S.C. s 45301(a)(1) covering "[a]ir traffic control and 
related services provided to aircraft other than military and 
civilian aircraft of the United States government or of a 
foreign government that neither take off from, nor land in, 
the United States." Petitioners therein raised several proce-
dural and substantive objections to the schedule. We reject-
ed procedural challenges for reasons set forth in our earlier 
opinion, but concluded that the substantive objections were 
meritorious. Therefore, we vacated the schedule in its entire-
ty and remanded to the FAA for further proceedings. Peti-
tioners' objection, with which we agreed, was straightforward. 
In the enabling statute, Congress had expressly directed the 
Administration to "ensure that each of the fees required ... 
is directly related to the Administration's costs of providing 
the service rendered," 49 U.S.C. s 45301(b)(1)(B). The FAA 
conceded the correctness of petitioners' rather unremarkable 
interpretation that the statute forbade the agency from bas-
ing fees on the value of services to the recipient rather than 
on cost to the provider. Because the Administration had 
determined its fee schedule based in essential part on the use 
of a system called "Ramsey pricing," which derived from 
nothing other than the value of services to the recipient, we 
had no difficulty in ruling that petitioners' substantive objec-
tion was well taken. 134 F.3d at 401-03. Because the rule 
before us and the supporting material "suggest[ed] no way to 
circumscribe a component of the fees based entirely on direct 
costs of services," we struck down the schedule in its entirety. 
Id. at 403. Successful petitioner ATAC now seeks recom-
pense for a portion of its attorneys' fees under the Equal 
Access to Justice Act ("EAJA"), 28 U.S.C. s 2412(d). Under 
that Act, we are required to "award to a prevailing party" of 
qualifying size against the United States fees and expenses 
inclusive of "reasonable attorney fees," subject to defenses 

and exceptions created by the Act. 28 U.S.C. s 2412(d)(1)(A) 
& (2)(A). While conceding that ATAC is a prevailing party 
for purposes of the Act, the FAA contests both its entitlement 
to fees and the amount of those fees on statutory grounds. 
Upon review of ATAC's claims and the FAA's defenses, we 
conclude that ATAC is correct as to its entitlement and the 
amount.

 A. Entitlement

 The EAJA provides, in pertinent part, that "a court shall 
award to a prevailing party ... fees and other expenses ... 
incurred by that party in any civil action ... including 
proceedings for judicial review of an agency action, brought 
by or against the United States ... unless the court finds 
that the position of the United States was substantially 
justified or that special circumstances make an award unjust." 
28 U.S.C. s 2412(d)(1)(A). While the FAA concedes that 
ATAC is a prevailing party and meets other criteria for the 
award of fees, it contests ATAC's entitlement, arguing that 
the position of the United States (in this case, its agency 
FAA) was substantially justified and that special circum-
stances would make an award unjust. Both objections fail.

 1. Substantial Justification

 Where, as here, a movant under the EAJA has established 
that it is a prevailing party, "the burden is on the government 
to show that its litigation position was substantially justified 
on the law and the facts." Cinciarelli v. Reagan, 729 F.2d 
801, 806 (D.C. Cir. 1984). To establish substantial justifica-
tion, the government need not establish that it was correct--
indeed, since the movant is established as a prevailing party it 
could never do so--but only that its position is one that "a 
reasonable person could think ... correct, that is, [that the 
position] has a reasonable basis in law and fact." Pierce v. 
Underwood, 487 U.S. 552, 566 n.2 (1988). The FAA claims 
that it has met that standard because ATAC raised five issues 
in its appeal, and the FAA prevailed on four of them. The 
Administration argues that we should conclude that the gov-
ernment's position was reasonable "on the full range of issues 


ATAC presented" and was therefore substantially justified. 
Brief of the FAA, citing Roanoke River Basin v. Hudson, 991 
F.2d 132, 139 (4th Cir. 1993).

 We cannot accept what the government styles as a "holistic 
approach" to determining whether an agency's position is 
substantially justified under the Act so as to bar the recovery 
of attorney fees by a prevailing party. That is, it cannot be 
the case that Congress intended that a party who prevails on 
an essential ground of a petition to set aside government 
action cannot recover the congressionally contemplated fees 
because the government's action was substantially unjustified 
on only one of several possible bases. Virtually any govern-
ment action is either grouped with other actions or is a 
component of some greater action. Presumably the govern-
ment is usually substantially justified on most of its actions. 
If a litigant who has successfully challenged a government 
action as substantially unjustified and achieved a complete 
victory in terms of the relief prayed cannot recover EAJA 
fees because of this well-nigh universal grouping, then Con-
gress's enactment of the EAJA becomes a virtual nullity. 
While we do not suggest that the substantial justification 
question can be determined without context, this does not 
mean that the context can be so "holistic" as to allow the 
government's generally justifiable conduct to defeat the oth-
erwise legitimate EAJA claim of a litigant who has succeeded 
in obtaining precisely the relief it prayed from the govern-
ment because of the substantially unjustified element under 
litigation. If the government would defeat ATAC's claim, it 
must do so by showing that the Administration's use of 
Ramsey pricing was substantially justified.

 The Administration makes a stab at justifying its action. 
It admits certain inarguable propositions: Congress directed 
it to "ensure that each of the fees required ... is directly 
related to the Administration's costs of providing the service 
rendered," 49 U.S.C. s 45301(b)(1)(B) (emphasis added); 
Ramsey pricing allocates each fee not on a cost basis but on 
the basis of the inflexibility of the demand among the users; 
the Administration determined each fee charged ATAC and 
the other petitioners on the basis of Ramsey pricing. None-
theless, in the face of these admitted inarguables, the Admin-

istration insists that because the total price structure was 
designed to recover the Administration's costs, that meant 
that the scheme complied with the statutory requirement that 
each fee be cost based. To allow that reasoning to control 
would be to write out of the statute the requirement that 
"each of the fees" be "directly related" to the cost of provid-
ing the service rendered. All that the Administration's rea-
soning can establish is that the totality of the fees charged all 
users is ultimately related to the cost of providing all services. 
We cannot hold that an attempt by an agency to completely 
displace Congress is substantially justified. We therefore 
hold that the respondent has failed to meet its burden of 
establishing that its actions meet this exception to the Equal 
Access to Justice Act.

 2. Special Circumstances

 The Administration next argues that even if ATAC's fee 
petition survives the substantial justification exception, it 
should be denied under the second statutory exception deny-
ing fees when "special circumstances make an award unjust." 
28 U.S.C. s 2412(d)(1)(A). The statute makes no attempt to 
define or in any way delineate what circumstance might be of 
the special sort warranting an exception to the EAJA. The 
statutory history, for what it's worth, includes a passage in 
the House Report accompanying the EAJA describing this 
exception as a "safety valve" and declaring that it

 helps to insure that the Government is not deterred from 
 advancing in good faith the novel but credible extensions 
 and interpretations of the law that often underlie vigor-
 ous enforcement efforts. It also gives the court discre-
 tion to deny awards where equitable considerations dic-
 tate an award should not be made.

H. R. Rep. No. 1418, 96th Cong., 2d Sess. at 11, reprinted in 
1980 U.S.C.C.A.N. 4953, 4984, 4990.

 With the scant guidance of the sparse legislative language 
and the snippet of history, courts have generally held that the 
statutory language expresses a congressional directive for 
courts "to apply traditional equitable principles" in determin-


ing whether a prevailing party should receive a fee award 
under EAJA. Oguachuba v. INS, 706 F.2d 93, 98 (2d Cir. 
1983). This seems sound as a guiding principle, although we 
have no occasion to attempt to establish a general rule of 
limitation on the application of that exception to the fee 
awards statute. In this case, the Administration contends 
that "traditional equitable principles" should bar a recovery 
because the Administration has made full reimbursement of 
all illegally determined fees to the members of ATAC and 
others who had paid fees under the improperly determined 
fee schedule. As the Administration notes, had it set the fees 
properly, those members would have paid some amount of 
money. Thus, to the extent that amounts which could have 
been lawfully collected from the airlines under properly de-
termined schedules are encompassed within the amounts 
unlawfully extracted from them but now refunded, the air-
lines have realized a windfall.

 As a bare logical proposition, what the Administration 
asserts is true. As a practical guideline to whether ATAC 
should recover a fee award in this case, the proposition is of 
little help. Neither the Administration, nor the petitioner, 
nor the court has any real idea what the numbers would be in 
the phantom calculation proposed by the Administration. 
The theoretical application of general principles of equity is 
not the sort of application of traditional principles upon which 
courts have based a denial of fee award in other cases. For 
example, in Oguachuba, upon which the Administration relies, 
the habeas corpus petitioner who was seeking the fee award 
had repeatedly violated federal immigration law in numerous 
ways "hoping to cause a technical error by the INS which 
would allow him to remain in this country." Though he 
indeed prevailed on his writ for habeas corpus, "he would not 
have been incarcerated in the first place but for his notorious 
and repeated violations of the United States immigration 
law." In denying him counsel fees, the Second Circuit, 
speaking in "classic equity terms," declared him to be "with-
out clean hands." 706 F.2d at 99.

 That theme of "unclean hands" pervades the jurisprudence 
of "special circumstances" under EAJA. In Taylor v. United 


States, 815 F.2d 249 (3d Cir. 1987), the court denied attor-
neys' fees where the applicant had taken advantage of unlaw-
ful government action and then challenged that action in 
order to avoid imprisonment under a valid manslaughter 
conviction. In United States Dep't of Labor v. Rapid Rob-
ert's, Inc., 130 F.3d 345 (8th Cir. 1997), the court denied a fee 
award to a petitioner who had reaped a windfall, but the 
windfall there was far different than the one argued by the 
government in the present case. In Rapid Robert's, the 
petitioner had unquestionably committed illegal acts, but the 
Department of Labor had imposed some of its penalties 
under an improperly promulgated regulation. A district 
court relieved Rapid Robert's of penalties considerably ex-
ceeding the amount that actually resulted from the invalidat-
ed regulation. There was no argument against the proposi-
tion that Rapid Robert's had acted illegally, only that a 
portion of the fines (in the view of the Circuit an excessive 
portion) had been remitted. The uncalculated possible wind-
fall in the present case does not bear the same stigma of 
unclean hands, nor should it cause the same result.

 In sum, the FAA has not established that this case comes 
within either of the exceptions to the fee award statute of 
EAJA, 28 U.S.C. s 2412(d). We therefore will enter an 
award as prayed by petitioner.

 B. Amount

 Although we conclude that the petitioner is entitled to an 
award, we nonetheless must consider the Administration's 
objections to the amount prayed. As the Administration 
argues, ATAC prevailed on only one of the grounds asserted. 
The Administration contends that under National Ass'n of 
Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 
1327 (D.C. Cir. 1982), ATAC should therefore only be award-
ed fees for the amount of attorney time spent on that issue. 
ATAC does not dispute this proposition. Because ATAC 
does not raise the issue, we need not consider whether the 
present petition is governed by National Ass'n of Concerned 
Veterans or by Hensley v. Eckerhart, 461 U.S. 424, 435 
(1983), which held that:


 Litigants in good faith may raise alternative legal 
 grounds for a desired outcome, and the court's rejection 
 of or failure to reach certain grounds is not a sufficient 
 reason for reducing a fee. The result is what matters.

Given petitioner's concession, we accept the government's 
proposition that only time spent on the Ramsey pricing issue 
will be compensable.

 Petitioner has filed an affidavit setting forth the hours 
worked on this litigation by various professionals. The appli-
cation further contains calculations applying to the hours 
worked, fee rates reflecting the cap of $125 per hour imposed 
by EAJA, 28 U.S.C. s 2412(d)(2)(A)(i) & (ii). After making 
other adjustments, the applicant applies a 40% multiplier to 
the figure to represent the portion of the total time which 
ATAC asserts was devoted to the issue on which it prevailed. 
Based on its calculations, ATAC prays a total of $99,246.93.

 The Administration attacks the reasonableness of the 
amount on two bases. First, it asserts that the 40% figure is 
too high, and that 25% (or less) would be reasonable. It 
offers little support for this proposition. The FAA argues 
only that the ground for ATAC's success was a "narrow" one, 
and that the court's opinion on the merits devoted only 25% of 
its space to the issue. Neither of these arguments is helpful. 
We are not at all certain what the Administration means by 
the "narrowness" of the ground, but we know that it was 
broad enough to entitle the petitioner to all the relief prayed. 
As to the percentage of time properly allotted to the success-
ful issue, the ratio of the space devoted to it in our opinion to 
the total length of the opinion bears no necessary relationship 
to the ratio of the time afforded the issue by ATAC's profes-
sional representatives to the total time those professionals 
expended on the case. Indeed, as ATAC points out, the 
space ratio in its brief yields a 44% figure. The best evidence 
before us as to a proper percentage is the affidavit of the 
submitting professional, and the Administration has done 
nothing to affect its credibility. We therefore employ the 
40% figure submitted by ATAC.


 The Administration's other argument for reducing ATAC's 
prayer for fees is that some of the fees and expenses incurred 
were attributable to the administrative proceedings prior to 
the litigation before us and not to the litigation itself. As the 
Administration notes, a petitioner for fees under EAJA "is 
foreclosed from claiming fees for proceedings before the 
agency unless those proceedings involved an 'adversary adju-
dication.' " Hirschey v. FERC, 760 F.2d 305, 311 (D.C. Cir. 
1985). Again, however, ATAC's petition, affidavit, and ac-
companying documentation support its claim, and as to attor-
neys' fees, we will not reduce the amount prayed.

 The Administration relies on the factually correct assertion 
that much of the professional time for which ATAC claims 
was incurred in connection with its unsuccessful motion for a 
stay pending the appeal. ATAC claims that the work per-
formed in preparation for the state petition, e.g., in preparing 
arguments on the "likelihood of success," contributed to the 
ultimate result obtained in this litigation. We find the peti-
tioner's assertion persuasive. As the Ninth Circuit observed 
in a fee awards case under a civil rights statute, 42 U.S.C. 
s 1988, "Rare, indeed, is the litigant who doesn't lose some 
skirmishes on the way to winning the war." Cabrales v. 
County of Los Angeles, 935 F.2d 1050, 1053 (1991). We agree 
with the Ninth Circuit that a litigant "who is unsuccessful at a 
stage of litigation that was a necessary step to her ultimate 
victory is entitled to attorney's fees even for the unsuccessful 
stage." Id. Accordingly, we award ATAC the amount 
prayed.

 Conclusion

 For the reasons set forth above, we are entering contempo-
raneously with the filing of this opinion an order allowing 
ATAC's petition for fees in the amount of $99,246.93.